IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| JUDITH A. ROGIND, individually, and on behalf of all others similarly situated, | ) ) ) Civil Action No. |
| Plaintiff, | ) ) |
| vs. | ) ) |
| NEW REZ, LLC, d/b/a SHELLPOINT MORTGAGE SERVICING, | ) ) |
| Defendant. | ) ) ) ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff, JUDITH A. ROGIND (hereinafter referred to as Plaintiff or Ms. Rogind), by and through her undersigned counsel, brings this Class Action Complaint against Defendant NEW REZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING (hereinafter referred to as "Shellpoint"), and upon her own knowledge and upon the investigation of counsel, alleges as follows:

## NATURE OF THE ACTION

1. This is a putative class action brought under Rule 23 of the Federal Rules of Civil Procedure to redress unfair and deceptive practices committed by Shellpoint in connection with its residential mortgage loan servicing business. Plaintiff and the proposed Class seeks to recover damages arising from forced-placed insurance or lender-placed hazard insurance ("FPI" or "LPI") and unlawful and unnecessary property inspection fees. The known misconduct regarding FPI or

LPI involves the following:

    a.  Placement of homeowners into LPI without notice in violation of §1024.37 of the Consumer Financial Protection Bureau and other Federal and State statutes and common law;

    b.  Double-billing for hazard insurance by increasing the homeowner's escrow account balance for Hazard Insurance after the homeowner purchased Hazard Insurance with her own funds;

    c.  Billing homeowners who live in Planned Unit Developments ("PUD") or condominiums for FPI and/or hazard insurance even though such insurance was previously purchased;

    d.  Billing homeowners for FPI and assessing for "insurance" each month per the homeowner's Monthly Mortgage Statement;

    e.  Providing misleading information in the homeowner's Monthly Mortgage Statements about their escrow balances; and,

    f.  Billing the homeowner for FPI after Shellpoint received written notice from the homeowner that hazard insurance had been purchased.

2.      In addition, this Class Action seeks to recover fees improperly charged for improper and unnecessary property inspections.

3.      Plaintiff and the Class members are borrowers who have been improperly charged for FPI and property inspection fees.

## **PARTIES**

4.      Plaintiff, Judith A. Rogind, at all times relevant to this Class Action Complaint, has been a resident of the Township of West Bloomfield, County of Oakland, State of Michigan.

5.      Defendant, New Rez, LLC d/b/a Shellpoint Mortgage Servicing, at all times relevant to this Class Action Complaint, is a limited liability company organized under the laws of Delaware, with its principal place of business located at 75 Beattie Place, #300, Greenville, South Carolina.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §1332(d) because at least one member of the Class is a citizen of a different state than Defendant, there are more than 100 Members of the Class, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

7.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, because Plaintiff's claims arise under the Fair Debt Collections Practices Act, 15 U.S.C. §1692k (d).  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367

8.     Venue is proper in this United States District Court pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Plaintiff's residence is in this district. Shellpoint has offices in this district in Troy and Livonia, Michigan.

9.     All conditions precedent to the filing of this action have been waived and/or satisfied.

## FACTUAL BACKGROUND

10.     Shellpoint is one of the largest mortgage servicers in the country. In 2018, Shellpoint serviced over 233,000 loans that had balances in excess of $57 billion dollars.  As of September 2020, those numbers have skyrocketed to over 1.7 million loans with an unpaid principal balance of approximately $283 billion. *See* Moody's Investors Service, Assessment dated April 19, 2021.

11.     Mortgage servicers like Shellpoint manage or "service" residential mortgage loans after they have been originated by mortgage lenders. Even when the mortgage is subsequently sold

by the lender to Fannie Mae, Shellpoint collects principal, interest, and escrow payments for "taxes and insurance."

12.     FPI or LPI are commercial insurance policies sold to lenders and their servicers. The terms of the FPI policy are determined by the lender and/or their servicer. The borrower is not the "named" insured. Instead, the borrower's name is added to a Master Policy that has been previously purchased by the lender or their servicer.

13.     When a borrower fails to procure hazard insurance, the lender or the mortgage servicer, after written notice, has the right to "force place" insurance to protect its interest and then charge the borrower for it.

14.     The Mortgage Agreement encumbering Plaintiff's property contains standard insurance and inspection provisions. (Ex. "A")

> **5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which the Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval that shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the property.
>
> *                *                *
>
> **9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower ***notice*** at the time of or prior to an inspection ***specifying reasonable cause for the inspection.*** (Emphasis added)

15.     The language contained in Class members' mortgages is either the same or nearly identical to the language contained in Plaintiff's mortgage.

16.     The Mortgage encumbering Plaintiff's property also contains a standard addendum known as a "Condominium Rider," which contains a provision concerning hazard insurance

coverage on the Plaintiff's property:

> **CONDOMINIUM COVENANTS.**   In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
>
> **B. Hazard Insurance.**   So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage", then:
>
> > (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and
> >
> > (ii) *Borrower's obligation under Uniform Covenant 5 to maintain hazard on the Property is deemed satisfied*.... (Emphasis applied)

17.    All Class members who live in condominiums or PUD have mortgages that contain the same or nearly identical language as the Plaintiff's Condominium Rider.

18.    At all times relevant to this Class Action Complaint, there was in place a hazard insurance policy that satisfied the Condominium Rider for the properties owned by the Plaintiff and Class Members and Defendant was aware of such policy.

19.    In addition, at all times relevant to this Class Action Complaint, Shellpoint had notice and knew that Plaintiff's property was covered by a hazard insurance policy and did not object to the adequacy of the policy.

20.    Plaintiff and Class members allege that Shellpoint knew or should have known at the time it began assessing them for FPI and other fees and charges that there was a hazard insurance policy in place and the sole reason for charging for FPI fees and charges was to enrich Shellpoint unfairly and unlawfully.

**Shellpoint's FPI/LPI Scheme**

21.     What was unknown to Plaintiff and the Class members, and not disclosed in mortgage agreements, is that Shellpoint had exclusive arrangements with certain insurance brokers and insurance companies from whom they procured Master Policies.  Specifically, Shellpoint did not purchase a hazard insurance policy for the Plaintiff or Class Members, but instead Shellpoint added their names to the Master Policy and then charged the escrow accounts of the Plaintiff and Class members inflated and non-competitive premiums, including purchasing far more insurance than required "to protect Lender's rights in the property."

22.     Shellpoint treated the Plaintiff and Class members in the same way with respect to their hazard insurance policies and escrow account procedures:

a.  Notified Plaintiff and Class members with the same cycle of form letters that their coverage had lapsed (even when it had not);

b.  Charged Plaintiff and Class members for FPI without any further notice;

c.  Increased their escrow account by the premium amount Shellpoint assigned to its previously purchased hazard insurance Master Policy even if the Plaintiff and Class member had paid for their own hazard insurance separately;

d.  Increased the escrow account balance in the amount for FPI even after receiving notification that Plaintiff and Class members had individual hazard insurance;

e.  For those Class Members who lived in a condominium or PUD, billing them for unnecessary FPI or notifying them that they must individually purchase hazard insurance and then charging them for FPI by increasing their escrow accounts; and

f.  Charged property inspection fees, without appropriate notice, contrary to the terms of the Plaintiff and Class members' Mortgage Agreements.

23.     In November 2019, Shellpoint became the mortgage servicer for the Plaintiff, replacing the previous mortgage servicer.  Shellpoint electronically deducted from the Plaintiff's checking account monies for payment of Plaintiff's mortgage principal, mortgage interest, taxes and insurance.  The insurance portion was for hazard insurance.

24.     From December 2019 through May 2020, but excepting March 2020, Shellpoint electronically deducted from Plaintiff's checking account monies for payment of Plaintiff's mortgage principal, mortgage interest, taxes and insurance.  The insurance portion was for hazard insurance.

25.     Starting in June 2020, ***without notice,*** Shellpoint purchased an unnecessary LPI policy (Ex. "C").  Additional monies for payments for LPI were added to the Plaintiff's escrow balance each month through and including October 2020 even though she already had hazard insurance paid for by the Condominium Association.

26.     Plaintiff, on or about October 20, 2020, purchased additional hazard insurance for $375.00 and paid for it with her own funds, with an effective date of October 7, 2020.

27.     Plaintiff as per written instructions from Shellpoint faxed the policy to Shellpoint at its office in Troy, Michigan.

28.     Plaintiff purchased the hazard insurance after she received a computer-generated form letter from Shellpoint's Troy, Michigan office on September 14, 2020.  (Ex. "D").  The form letter contained a number of materially false statements:

a.  "Because we did not have evidence that you had hazard insurance on the property listed above, we bought insurance on your property and added the cost to your mortgage loan account."

b.  "The policy that we bought is scheduled to expire.  **Because hazard insurance is required on your property, we intend to maintain insurance on your property by renewing or replacing the insurance we bought.**"

29.     The statements in the previous paragraph are intentionally false and misleading and violate state law, federal laws, and federal regulations for at least the following reasons:

    a.  Shellpoint's letter ignores the fact that each month Plaintiff and Class members were paying monies into their escrow accounts for "taxes and insurance" (Ex. "B");

    b.  Shellpoint's letter ignores the fact that Plaintiff and those Class members whose hazard insurance is paid for by their Condominium Association or PUD already had hazard insurance in place and there was no need for FPI;

    c.  Shellpoint never "bought" the expiring policy.  Instead, Plaintiff and Class members were added to an existing "Master Policy."

30.     As noted above, after receiving the September 14, 2020 letter, Plaintiff purchased hazard insurance and provided a copy of the policy to Shellpoint. Shellpoint subsequently sent a computer-generated form letter on November 2, 2020, to Plaintiff that also contained a number of materially false statements.  (Ex. "E").

31.     Among the materially false statements made by Shellpoint are the following:

    a.  "Because we did not have evidence that you had hazard insurance, we bought insurance on your property and added the cost to your mortgage loan account."

    b.  "The insurance we buy: Will cost an estimated $1,061.40 annually. . ."

32.     The above communication was intentionally false and misleading. Shellpoint, in fact, did have "evidence" that Plaintiff had purchased hazard insurance on her own because Shellpoint charged the identical amount ($375.00) in the same month the Plaintiff purchased it. (Ex. "C") Second, the "cost" of the FPI was not the amount stated because Shellpoint did not buy an individual insurance policy for the Plaintiff or Class members.  Instead, Plaintiff and Class members' names were added to a previously purchased "Master Policy."

33.     Even though Shellpoint was notified that Plaintiff had purchased hazard insurance

or knew or should have known the Condominium Association had acceptable insurance in force, Shellpoint continued to bill Plaintiff for FPI. Shellpoint also increased the escrow account balance by the monthly cost of FPI.

34.     Despite having paid for the hazard insurance in full, on October 27, 2020, Shellpoint charged Plaintiff $375.00 for "Hazard Disbursement."  Three (3) days later, on October 30, 2020, Shellpoint charged Plaintiff $97.98 for "Lender Placed Hazard Disbursement." Shellpoint also collected $128.52 for "taxes and insurance" to be deposited into the Plaintiff's escrow account. (Ex. "B"). Hence, this Shellpoint Mortgage Statement contains three (3) separate charges for insurance, all unnecessary and unlawful because Plaintiff already had hazard insurance coverage through the Condominium Association and through the insurance she purchased.

35.     Although it is true that Plaintiff and Class members' mortgage loan agreements permit the lender or its agent to procure FPI in certain circumstances, the purpose and intent of these agreements is that the insurance purchased be reasonable and necessary to protect the legitimate interests of the lender.  None of these mortgage loan agreements permit the lender or its agent to charge the Plaintiff and Class members for "insurance" as part of their monthly mortgage payment and also charge them for forced-placed insurance.  (Ex. "B").

36.     Permitting a lender or its agent (the mortgage servicer) to purchase FPI is not a new concept nor a term undisclosed in the Plaintiff and Class members' mortgage agreements. Standard mortgage agreements permit the lender or its agent to obtain FPI and charge the borrower for it.  The problems occur when, as in this instance, Shellpoint takes advantage of the lack of monitoring or oversight by the lender or government regulator (Fannie Mae) and engages in dishonest business practices.

37.     The mechanism for financing forced placed insurance on Plaintiff and Class

members was that Shellpoint paid an unknown amount to one of the exclusive parties it was dealing with for the FPI and then increased the escrow account balances of the Plaintiff and the Class members by charging them inflated and non-competitive premiums.

38.     Shellpoint, by operating in coordination with preferred insurance agents and preferred insurers for the purpose of procuring "Master Policies," was an integral part of the scheme to receive various forms of remuneration, all undisclosed to the Plaintiff and Class members, and to their detriment while benefitting Shellpoint.

39.     Accordingly, Shellpoint, in its capacity as a nationwide loan servicer, had a significant economic incentive to place borrowers into FPI.

### Shellpoint's Property Inspection Fee Scheme

40.     Another source of improper revenue was the monthly "property inspection fees." Under Plaintiff's mortgage agreement, Shellpoint was required to give the Plaintiff "reasonable notice prior to an inspection," "specifying reasonable cause for the inspection."  (Ex. "A").

41.     As more fully described herein, this scheme simply involved someone, whether a Shellpoint employee or their agent, purportedly driving by the residence to see if the property was occupied and then charging $15.00 each month, regardless of whether Shellpoint had complied with the Plaintiff's or Class members' mortgage requirements, *i.e.*, by giving reasonable notice prior to an inspection and reasonable cause for the inspection.

42.     Under Plaintiff's mortgage agreement, Shellpoint was required to give the Plaintiff "reasonable notice prior to an inspection," "specifying reasonable cause for the inspection."  (Ex. "A")

43.     Plaintiff's November 18, 2020, Shellpoint Mortgage Statement also contains a $15.00 "Property Inspection Disbursement" charge. (Ex. "B") Prior to this charge Plaintiff did not

receive "notice" nor what the "reasonable cause" for the inspection was, contrary to the terms of her mortgage.  (Ex. "A", ¶ 9).

44.     Since Shellpoint failed to provide Plaintiff with "notice" and because there is a lack "reasonable cause" for the purported inspection, and at no time did any inspector make contact with Plaintiff during any alleged inspection for which Plaintiff was charged, it is unclear why Shellpoint ordered an inspection, or whether an inspection of Plaintiff's property occurred at all.

45.     On information and belief, Class members had the same (or similar) provisions in the Mortgage Agreements for the "Property Inspection Disbursement Charge."

46.     On information and belief, Shellpoint charged Class members for these property inspection fees without proper notice and reasonable cause to improperly inflate its revenue.

47.     On information and belief, Shellpoint as a matter of policy has not refunded the monies charged or reduced the escrow balances of the Plaintiff or Class members for the hazard insurance or property inspection fees charged to their escrow accounts.

48.     In light of the millions of loans serviced by Shellpoint, untold thousands of homeowners have been victimized by these schemes even if this occurred to only one percent of Shellpoint's customers.

49.     As a result of the assessment to the Plaintiff and Class members' escrow account for individually purchased hazard insurance after it was purchased, and non-noticed and unnecessary property inspections, Shellpoint has obtained Plaintiff and the Class members' monies and/or increased their debt obligations without justification and contrary to applicable laws and regulations.

50.     The various improper schemes previously described herein were designed so Shellpoint could increase its profits to the detriment of the Plaintiff and Class members.

## **TOLLING OF THE STATUTES OF LIMITATIONS**

51.     Plaintiff's claims herein are subject to equitable tolling stemming from Plaintiff's inability to obtain important information underlying her claims.  Any applicable statutes of limitation are properly tolled because Plaintiff and Class Members did not know and could not have learned the true facts underlying these claims until shortly before filing this Class Action Complaint, including but not limited to the investigation of counsel.

52.     Plaintiff and Class members were not on inquiry notice of Shellpoint's wrongdoing and had no duty to initiate an investigation because the charges for FPI and inspection fees were represented by Shellpoint to be legitimate.  Plaintiff did not know and could not know of Shellpoint's violations of state laws, federal laws, and federal regulations.

53.     Plaintiff and Class Members were relieved of any duty to investigate because Plaintiff and Class Members had the right to rely on Shellpoint to comply with applicable state and federal laws and federal regulations.  Moreover, neither Plaintiff nor the Class Members had the background to conduct an investigation.

54.     Plaintiff and Class members did not discover and could not discover that the premiums for FPI and property inspection fees were unlawful and excessive.  Plaintiff and Class members' claims were thus equitably tolled until the filing of the Complaint.

55.     Moreover, Shellpoint knowingly and intentionally engaged in conduct calculated to induce Plaintiff to refrain from or postpone the commencement of this action.

56.     Plaintiff and Class members' claims are also subject to the continual accrual and/or continuous violation doctrines.  The violations by Shellpoint were continuous and repetitive and continuous to this day.  The limitations period for Plaintiff and Class members' claims accrue upon the last of Shellpoint's unlawful and/or improper acts.

**CLASS ACTION ALLEGATIONS**

57.     Plaintiff brings this action against Defendant Shellpoint individually and on behalf of all individuals similarly situated pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:

**"The National Forced Place Insurance Class"**

All persons in the United States or any United States Territory who had their mortgage serviced by Shellpoint or its affiliates, subsidiaries, agents, or employees, within the applicable statute of limitations, who were improperly charged for forced placed insurance in one or more of the following objectively verifiable ways:

(a) Shellpoint charged for FPI without providing the required 45-day notice;
(b) Shellpoint charged for FPI when the borrower had an existing policy in force, including as part of the condominium or PUD rider;
(c) Shellpoint charged for FPI after receiving notice of an existing hazard policy being in place;
(d) Shellpoint charged for FPI despite also collecting escrow amounts for the purchase of hazard insurance.

**"The National Property Inspection Fee Class"**

All persons in the United States or any United States Territory who were charged one or more property inspection fees through Shellpoint's automatic loan servicing platform, while they were inhabiting the property without Shellpoint providing notice and reasonable cause for the inspection.

58.     Plaintiff and Class Members reserve the right to amend the Class definitions as discovery proceeds and to conform to the evidence.  Excluded from the Classes are Shellpoint, any subsidiary or affiliate of Shellpoint, and its directors, officers and employees.

**NUMEROSITY**

59.     Under Fed. R. Civ. P. (23)(a)(1), the proposed class is made up of at least 40 persons, the joinder of whom are impracticable except by means of a class action.

60.     The Class is so numerous that joinder of its members is impracticable. Shellpoint

services millions of mortgage loans and/ or hundreds of thousands force-placed insurance policies nationwide.  The exact number of class members can be ascertained through discovery and review of Shellpoint's business records.  Plaintiff believes that the number of Class members is, at least, in the thousands.

61.    The proposed class is ascertainable because it is defined by reference to objective criteria.  Upon information and belief, the names and addresses of all members of the proposed class can be identified during discovery from the business records maintained by Shellpoint.

## COMMONALITY

62.    Under Fed. R. Civ. P. 23(a)(2), all Class Members' claims (including Plaintiff's) are unified in that they arise from the same improper charging of forced-placed insurance and property inspection fees.  These questions of law and fact are common to the Class Members' claims (including Plaintiff's).  Furthermore, Plaintiff's interests are coincident with, and not antagonistic to, those of the proposed class.

63.    Plaintiff and Class members were damaged as a result of being charged for FPI and unnecessary property inspections.

64.    The claims of the Plaintiff and Class members have a common origin and share a common basis. Their claims originate from the same improper acts on the part of Shellpoint, as well as conduct by other unnamed parties that aided and abetted its conduct.

65.    Among the common questions of law and fact are the following:

a.    whether Shellpoint assessed each borrower for FPI without notice;

b.    whether Shellpoint assessed each borrower for FPI even though hazard insurance was already paid for by the Condominium Association or PUD Association;

c.    whether Shellpoint assessed each borrower for FPI after they purchased individual

hazard insurance and provided proof to Shellpoint;

d.  whether Shellpoint assessed each borrower for individual hazard insurance after they provided proof they had purchased it with their own monies;

e.  whether Shellpoint assessed each borrower for FPI even though Shellpoint was also collecting monies on a monthly basis for "insurance" and for other purposes (mortgage principal, mortgage interest, and taxes);

f.  whether Shellpoint assessed each borrower for monthly inspection fees that violated the terms of their mortgage;

g.  Whether Shellpoint provided appropriate notice of inspection

h.  Whether Shellpoint had reasonable cause to inspect the premises.

i.  whether Shellpoint has a policy and practice of charging persons in arrears on the mortgage unlawful and unreasonable inspection fees;

j.  whether Shellpoint fully disclosed the nature and extent of the FPI policies;

k.  whether Shellpoint has been unjustly enriched at the expense of the Plaintiff and Class Members;

l.  whether Plaintiff and Class Members are entitled to damages, whether statutory or otherwise and/or injunctive relief as a result of the conduct of Shellpoint.

## **TYPICALITY**

66.  Plaintiff is a member of the Class she seeks to represent. Plaintiff's claims are typical of the respective class claims because of their similarity, and common purpose of Shellpoint's unlawful conduct.  Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of the conduct and actions of Shellpoint.

67.  Plaintiff's claims are typical of the Class members.  All Class members, including the Plaintiff sustained an injury as a result of Shellpoint's scheme and common course of conduct.

68.  Plaintiff and the Class members were damaged as a result of having paid or having their escrow accounts wrongfully assessed for FPI and/or property inspection fees.

69.     Plaintiff's state law claims are also typical of the Class members.  If the state law claims were brought and prosecuted separately, the state law claims of each Class member would require proof of the same material and substantial facts.

## **SUPERIORITY**

70.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant opposing the class; and, adjudication by individual members of the class would as a practical matter be dispositive of the interests of other members not parties to such adjudications.

71.     Plaintiff's claims are sufficiently aligned with the interests of the Class members to ensure that the claims of the Class will be prosecuted with diligence and care by Ms. Rogind as the representative of the Class.

72.     Plaintiff's interests are co-extensive and not antagonistic to those of the Class members.

73.     Plaintiff will fairly and adequately protect the interests of the Class members.  She has no interests adverse to, or which are directly in conflict with the interests of the Class members.

74.     Individual litigation of all claims that might be asserted by class members would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years.  Class treatment provides manageable judicial treatment calculated to bring a rapid conclusion of all litigation of all claims arising out of the conduct of Shellpoint.

75.     Class certification is appropriate pursuant to Fed R. Civ. P. 23(b)1)(A) and 23(b)(1)(B).  The certification of the class would allow litigation of claims that, in view of the

expense of the litigation, may be insufficient to support separate claims.

76.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2), in that New Rez d/b/a Shellpoint has acted or refused to act on grounds generally applicable to the Class(es), making final or injunctive relief appropriate.

77.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), in that questions of law and fact that are common to the Class(es) members predominate over any questions affecting only individual members.

78.     A class action is superior to other methods of fair and efficient adjudication of the controversies raised in this Complaint.

## ADEQUACY OF REPRESENTATION

79.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this type of matter, to represent her.  Plaintiff has chosen the undersigned law firms, which are experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

## COUNT I
## BREACH OF CONTRACT
## (NATIONAL FORCED PLACE INSURANCE CLASS)

80.     Plaintiff repeats and realleges paragraphs 1 through 1-79 as if fully restated herein.

81.     Plaintiff brings this cause of action on behalf of herself and the members of the National Forced Place Insurance Class.

82.     Plaintiff and the Class members' mortgages are written on uniform mortgage forms and contain substantially similar conditions regarding FPI requirements.  Plaintiff's Mortgage Agreement is attached as Exhibit "A" to this Complaint and contains conditions for FPI.

83.     Plaintiff's mortgage requires that she maintain insurance "in the amounts and the periods that Lender requires."  In the event Plaintiff "fails to maintain coverage," lender at its option can "obtain coverage to protect Lender's rights in the property..."

84.     Shellpoint breached Plaintiff and the Class members' mortgage agreements by charging Plaintiff and the Class members for FPI that was inflated, unnecessary, not required, had previously been purchased, and/or without notice.  Shellpoint further breached Plaintiff and the Class members' mortgage agreements by failing to reimburse them for the costs of FPI premiums.

85.     Shellpoint breached the mortgage agreements by, among other things, improperly charging the Plaintiff and the Members of the National Forced Place Insurance Class for excessive and unnecessary FPI.

86.     These types of breaches of contract are so widespread that the Consumer Protection Financial Bureau ("CPFB") issued a series of regulations to prevent these types of breaches.

87.     According to CPFB § 1024.35(b)(5), Shellpoint may not impose a fee or charge that Shellpoint lacks a reasonable bases to impose upon Ms. Rogind and the Class members, yet it breached the terms of these uniform agreements when they were charged for unnecessary FPI and unnecessary property inspection fees.

88.     Similarly, Shellpoint's breach of contract to acquire FPI without notice is a violation of CPFB § 1024.37(c), which requires Shellpoint to provide a 45-day written notice to Ms. Rogind and Class members for FPI prior to such purchase. In the case of Ms. Rogind, when Shellpoint took over the servicing of her mortgage in October/November 2019 from the prior servicer, Shellpoint imposed FPI premiums without notice.  (Ex. "C")

89.     Shellpoint's breach also violated the aforementioned section by failing to provide a second "reminder" notice 15 days before the imposition of the FPI policy according to CPFB §

1024.37(d).

90.     Shellpoint's breach of contract whereby it continues to charge for FPI even after it received notice that Plaintiff and the Class acquired or had insurance is also a violation of CPFB § 1024.37(g).  In October 2020, after Ms. Rogind received "notice" to obtain hazard insurance (Ex. "D"), she faxed a copy of her Hazard Insurance Policy by using the facsimile number in the Troy, Michigan office provided to her by Shellpoint.  (Ex. "D") Shellpoint did not "cancel" the FPI purchased.  Instead, Shellpoint continued to charge Ms. Rogind for FPI by assessing her mortgage escrow account.  (Ex. "C")

91.     As the direct and proximate result of Shellpoint's breach of contract, Plaintiff and the Class members have suffered damages and are entitled to the relief deemed appropriate by this Court, including costs and reasonable attorneys' fees.

**COUNT II**
**BREACH OF CONTRACT**
**(NATIONAL PROPERTY INSPECTION FEE CLASS)**

92.     Plaintiff repeats and realleges paragraphs 1 through 1-91 as if fully restated herein.

93.     Plaintiff brings this cause of action on behalf of herself and the members of the National Property Inspection Fee Class.

94.     Plaintiff's standardized Mortgage also contains a provision for the inspection of her property by the lender or its agent.  The Mortgage specifies the terms for when a property inspection is allowed.  A property inspection may occur only after "notice" has been given prior to the inspection and must specify the "reasonable cause" for the inspection.

95.     Shellpoint charged Plaintiff and the Class members for inspections without providing the required notice and reasonable cause for the inspection.

96.     Shellpoint breached Plaintiff and the Class members' mortgage agreements by,

among other things, improperly charging the Plaintiff and the Members of the National Property Inspection Class for unnecessary and improper property inspection fees.

97.     As the direct and proximate result of Shellpoint's breach of contract, Plaintiff and the Class members have suffered damages and are entitled to the relief deemed appropriate by this Court, including costs and reasonable attorneys' fees.

**COUNT III**
**UNJUST ENRICHMENT**
**(NATIONAL FORCED PLACE INSURANCE CLASS)**

98.     Plaintiff repeats and realleges paragraphs 1 through 1-97 as if fully restated herein.

99.     Plaintiff brings this cause of action on behalf of herself and the members of the National Forced Placement Insurance Class.

100.     Shellpoint has benefitted from its unlawful and improper acts through receipt of payments for FPI from Ms. Rogind and the Class members.  (Exs. "B" and "C")

101.     These payments were received by Shellpoint when they were paid and/or assessed to the mortgage escrow accounts of Ms. Rogind and the Class members, at their expense and under circumstances (previously mentioned) where it would be inequitable for Shellpoint to be permitted to retain this benefit.

102.     Shellpoint received FPI premiums to the detriment of Ms. Rogind and each member of this Class.

103.     Shellpoint will be unjustly enriched if it is allowed to retain the aforementioned FPI premiums, and Ms. Rogind and the Members of the Class are entitled to recover the amount by which Shellpoint was unjustly enriched at their expense.

104.     Ms. Rogind and the Class members are entitled to the establishment of a constructive trust consisting of the benefit conferred upon Shellpoint in the form of FPI premiums

from which Ms. Rogind and the Class members may make their claims along with the recovery of appropriate fees and costs.

### COUNT IV
### UNJUST ENRICHMENT
### (NATIONAL PROPERTY INSPECTION FEE CLASS)

105.    Plaintiff repeats and realleges paragraphs 1 through 1-104 as if fully restated herein.

106.    Plaintiff brings this cause of action on behalf of herself and the members of the National Property Inspection Fee Class.

107.    Plaintiff's standardized Mortgage also contains a provision for the inspection of her property by the lender or its agent.  The Mortgage specifies the terms for when a property inspection is allowed.  A property inspection may occur only after "notice" has been given prior to the inspection and must specify the "reasonable cause" for the inspection.

108.    Shellpoint charged Plaintiff and the Class members fees for inspections without providing the required notice and reasonable cause for the inspection.

109.    Shellpoint will be unjustly enriched if it is allowed to retain the property inspection fees, and Ms. Rogind and the Members of the Class are entitled to recover the amount by which Shellpoint was unjustly enriched at their expense.

110.    Ms. Rogind and the Class members are entitled to the establishment of a constructive trust consisting of the benefit conferred upon Shellpoint in the form of property inspection fees from which Ms. Rogind and the Class members may make their claims along with the recovery of appropriate fees and costs.

**COUNT V**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(15 U.S.C. § 1692. *et seq*.)**

111.    Plaintiff repeats and realleges paragraphs 1 through 1-110 as if fully restated herein.

112.    Plaintiff brings this cause of action on behalf of herself and the members of The National Forced Place Insurance Class and The National Property Inspection Fee Class.

113.    On November 2, 2020, Shellpoint mailed to the Plaintiff a letter stating they had "bought hazard insurance on her property and added the cost to the mortgage loan account." (Ex. "E"). Shellpoint stated in this same letter that they are a "debt collector." (*Id*. at p. 3)

114.    In November 2020, Shellpoint mailed to the Plaintiff a "Mortgage Statement" demanding payment of monies.  Shellpoint informed the Plaintiff they were a "debt collector." (Ex. "B").

115.    Ms. Rogind and the Members of the Classes (2) are "consumers" as defined by 15 U.S.C. § 1692a(3).

116.    The mortgage loans encumbering the properties of Ms. Rogind and Class members, which Shellpoint services, are debts under the Fair Debt Collection Practices Act ("FDCPA") because each mortgage is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction.... primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5).

117.    Shellpoint is a "debt collector" as defined by 15 U.S.C. § 1692a(6) with respect to the mortgage loans of Ms. Rogind and Class members because it regularly attempts to collect, and collects, amounts owed or claimed to be owed or due to another, including the mortgages debts of Ms. Rogind and Class members via monthly loan statements or payoff statements. (Ex. "B"). These monthly mortgage statements are uniform in form and layout and are sent using the

instrumentalities of interstate commerce in connection with the collecting of a debt.

118. Shellpoint engaged in direct "communications" with Ms. Rogind and Class members as defined by 15 U.S.C. § 1692a(2) when Shellpoint sent them monthly loan statements or payoff statements, purportedly demanding monies due with respect to their mortgage loans, whether because the mortgage loans were overdue or payoff letter for their mortgage loans.

119. The FDCPA creates a private right of action under 15 U.S.C. 1692k.

120. Congress created shared, substantive rights for Ms. Rogind and the Class members to be privately enforced and protected under the FDCPA, which Shellpoint has violated.

   a. 15 U.S.C. § 1692e states; A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

      (2) The false representation of–
      (A) the character, amount or legal status or any debt; or
      (B) any services rendered or compensation which may be lawfully received by any debt collector for the collections of a debt
      (10) The use of any false representation or deceptive means to collect any debt or to obtain information concerning a consumer.

   b. 15 U.S.C. § 1692f states; A debt may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

      (1) The collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

121. Based on the foregoing allegations, Shellpoint violated 15 U.S.C. §1692e(10) because it used deceptive means to collect debts including but not limited to charging for unnecessary FPI and  property inspection fees.  These charges were contained in monthly loan statements and were ordered and scheduled by automated means in a way that would confuse a

consumer.

122.    Based on the foregoing allegations, Shellpoint violated § 15 U.S.C. 1692e(2)(A) because through its monthly loan statements or payoff statements imposing unnecessary charges for FPI, and/or improper and unnecessary property inspection fees Shellpoint falsely or misleadingly stated or represented the amount, character, or status of the amounted needed to pay Ms. Rogind and the Class members' mortgage debts.

123.    Based on the foregoing allegations, Shellpoint violated § 15 U.S.C. 1692e(2)(B) when, through its monthly loan statements or payoff statements, imposed charges for unnecessary FPI, or improper and unnecessary property inspection fees Shellpoint falsely or misleadingly stated or represented the compensation it might lawfully receive from Ms. Rogind and the Class members.

124.    Based on the foregoing allegations, Shellpoint used unfair means of collecting monies for unnecessary FPI and/or improper and unnecessary property inspection fees, in violation of 15 U.S.C. § 1692f because the amounts were not expressly authorized by Ms. Rogind and the Class members' mortgage instruments creating their debts or were not permitted by law.

125.    These violations of FDCPA caused injury to Ms. Rogind and the Class members by violating the foregoing substantive FDCPA rights.

126.    As a direct and proximate cause of these violations, Ms. Rogind and the Class members are entitled to an award of statutory damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1692(k).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Judith A. Rogind, on behalf of herself and Class Members demand judgment against Defendant New Rez d/b/a Shellpoint as follows:

a.      Certification of the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as the representative of the Classes, designating her counsel as counsel for the Classes;

b.       Damages in an amount equal to treble the amount of damages suffered by Plaintiff and Class members as proven at trial plus interest, costs, and attorneys' fees;

c.      Any additional damages, penalties or other monetary relief provided by applicable law;

d.      Disgorgement of Defendant's unjust enrichment and/or imposing a constructive trust upon the ill-gotten monies received;

e.      An injunction preventing the Defendant from engaging in future illegal practices;

f.      A declaration that Shellpoint has committed the violations alleged herein;

g.      Costs of this action including statutory and/or reasonable attorneys' fees and the costs of bringing this litigation;

h.      Any such other and further relief as this Honorable Court deems just and equitable.

## **JURY DEMAND**

Plaintiff demands a trial by jury on those claims so triable as a matter of right.

DATED: October 26, 2021

Respectfully submitted,


**HEISE SUAREZ MELVILLE, P.A.**
1600 Ponce De Leon Boulevard
Suite 1205
Coral Gables, Florida 33134
Telephone (305) 800-4476

By: */s/ Mark J. Heise*
      Mark J. Heise
      Florida Bar No. 771090
      mheise@hsmpa.com
      Dorian N. Daggs (pending *pro hac vice*)
      Florida Bar No. 1028485
      ddaggs@hsmpa.com


**HOWARD E. GURWIN P.C.**
30300 Northwestern Highway
Suite 302
Farmington Hills, Michigan 48334
Telephone: (248) 352-2727

By:   */s/Howard E. Gurwin*
      Howard E. Gurwin
      Michigan Bar No. P25179
      hgurwin@howardgurwin.com


*Attorneys for Plaintiff*